Joseph R. BEYRLE, Sr., Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 94–688.

United States Court of Veterans Appeals.

March 27, 1996.

Joseph R. Beyrle, Sr., pro se.

Mary Lou Keener, General Counsel; Norman G. Cooper, Assistant General Counsel; David W. Engel, Deputy Assistant General Counsel; and Adam K. Llewellyn, Washington, DC, were on the pleadings, for appellee.

Before NEBEKER, Chief Judge, and HOLDAWAY and STEINBERG, Judges.

STEINBERG, Judge:

The pro se appellant, World War II veteran Joseph R. Beyrle, Sr., appeals an April 29, 1994, Board of Veterans' Appeals (BVA or Board) decision denying an increased (compensable) rating for residuals of a gunshot wound of the right upper extremity [hereinafter residuals] and denying that there was clear and unmistakable error (CUE) in a May 26, 1947, Veterans' Administration (now Department of Veterans Affairs) (VA) regional office (RO) decision. Record (R.) at 4–12. The Court has raised the issue whether the appellant has filed a jurisdictionally effective Notice of Disagreement (NOD) for purposes of this appeal. For the reasons that follow, the Court will hold that the Court has jurisdiction over this appeal.

### I.  Facts Relevant to NOD issue

The veteran first raised the CUE claim in a May 1991 letter from his representative (the Disabled American Veterans (DAV)) to the RO, stating:

> The purposes of this memorandum is to seek corrective action pursuant to 38 [C.F.R. § ] 3.105(a) of May 26, 1947, and subsequent rating decisions for failing to establish entitlement to a twenty percent evaluation under [D]iagnostic [C]ode [ (DC) ] 5303 for through and through gunshot wound injuries of this veteran's right upper extremity.
>
>  . . . .
>
> It is our contention [that the] May 26, 1947, and subsequent [RO] decisions evidence [CUE] in failing to establish entitlement to a 20[%] evaluation for moderate injury, muscle group III, under [DC] 5303.

R. at 191–93. In an August 1991 decision, the Board remanded for further development and readjudication an unrelated back claim

that had been in appellate status. R. at 195–96. In its May 1992 decision on remand, the RO, after deciding the back claim, additionally denied the veteran's CUE claim and noted that applicable regulations had been considered in the 1947 RO decision. R. at 199–201. The RO decision stated:

It is conclusively stated in the [1947 VA] examination report that the veteran did not have any disturbance of underlying muscular function and that the wound was noted to be superficial.... As such, we accept the examination results as factual and conclude ourselves that the wound is superficial and that a noncompensable evaluation is indeed appropriate.

R. at 201. In June 1992 (apparently without having received a response from the veteran), the RO issued a Supplemental Statement of the Case (SSOC) which identified two issues: "Entitlement to service connection for arthritis of the lumbar spine and sacroiliac joint secondary to the veteran's [Prisoner of War] experience" and "[r]equest for award action under 38 C.F.R. § 3.105(a) for entitlement to a 20% evaluation for a through and through gunshot wound of the right upper extremity". R. at 205. The SSOC stated the following as to the May 1992 RO decision: "Relative to the new issue of a compensable evaluation for a through and through gunshot wound, under the provisions of 38 C.F.R. § 3.105(a), a compensable evaluation was denied.... Veteran was notified of the [RO][d]ecision together with Notice of Right to Appeal." R. at 206–07. A VA cover letter, enclosing the SSOC, stated:

If this [SSOC] ... contains an issue which was not included in your Substantive Appeal, you must respond *within 60 days* to perfect your appeal as to the new issue. If you do not timely file a Substantive Appeal as to the new issue(s), we will place your records on the docket of the [Board] for review of the prior issues....

R. at 204 (emphasis added).

A September 11, 1992, letter from the veteran's representative (the DAV) to the RO noted that its May 1991 letter to the RO had requested consideration under § 3.105(a); that the RO's May 1992 decision had considered this issue; and that the June 1992 SSOC had been "procedurally deficient" because, among other things, it had failed to address the CUE issue. Supplemental (Suppl.) R. at 1. The letter requested that a new SSOC be issued and that there be an "expeditious transfer of the file to the [Board] following the above actions." Finally, the letter noted that the veteran would waive any time requirements under the due process provisions "to allow for this immediate transfer".

In September 1992, the RO issued a second SSOC to remedy the deficiency in its prior SSOC and "to provide the veteran with information concerning current VA [r]egulations which apply to his claim for benefits" and which pertain "to revisions of decision under [38 C.F.R. § ] 3.105(a)". R. at 215, 214. The RO attached the same standard cover letter as with the June 1992 SSOC to the veteran. R. at 212. In October 1992, the RO issued a third SSOC to provide the veteran with specific citations to regulatory provisions, as requested by his representative's September 1992 letter. R. at 218–22. The RO again attached the same standard cover letter as with the June and September 1992 SSOCs to the veteran. R. at 217.

At a November 1992 hearing before the Board, the chairman of the Board panel stated that there were two issues for consideration: (1) Service connection for arthritis of the spine and sacroiliac joint, and (2) whether CUE had been committed in the May 1947 and subsequent RO decisions as to the veteran's right deltoid. R. at 226. At the hearing, the veteran's representative argued that the CUE claim had been raised in the May 1991 DAV memorandum; that that claim had been denied in the May 1992 RO decision; and that the veteran had "appealed" this claim. R. at 233–34.

A February 1993 Board decision, inter alia, remanded the CUE claim to the RO for it to provide the veteran with "a VA special orthopedic examination to determine the nature and extent of the veteran's service-connected residuals of a gunshot wound of the right deltoid." R. at 260. The veteran then submitted a May 1993 private orthopedic examination report prepared by Dr. Mead. R. at 263. In July 1993, a VA examination report

addressed the Board's questions on remand (R. at 268), and the RO denied the CUE claim and an increased rating for the residuals (R. at 272–75). An August 1993 SSOC identified the issue on appeal as a CUE claim for entitlement to a 20% rating for residuals from April 1946. R. at 278. In September 1993, the veteran submitted a letter to the RO referencing the RO's July 1993 decision, stating that he disagreed with its denial of "service connection" for a through-and-through bullet wound to his upper right shoulder, and noting that he planned to file "a statement of [the] case" through his DAV representative. Suppl. R. at 4.

In the April 1994 BVA decision here on appeal, the Board concluded that the criteria for a compensable rating for residuals had not been met, and that previous RO decisions assigning noncompensable ratings for them did not contain CUE. R. at 6.

## II. Analysis

■ This Court's appellate jurisdiction derives exclusively from statutory grants of authority provided by Congress and may not be extended beyond that permitted by law. *See Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 818, 108 S.Ct. 2166, 2178–79, 100 L.Ed.2d 811 (1988); *see also Prenzler v. Derwinski*, 928 F.2d 392, 393–94 (Fed.Cir.1991); *Skinner v. Derwinski*, 1 Vet. App. 2 (1990). The Court has jurisdiction to review only those final BVA benefits decisions prior to which an NOD was filed on or after November 18, 1988, as to an underlying decision of an RO or other agency of original jurisdiction (AOJ). *See* Veterans' Judicial Review Act (VJRA), Pub.L. No. 100–687, § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C. § 7251 note); 38 U.S.C. § 7105. Pursuant to 38 U.S.C. § 7105(a), (d)(1), (3), an NOD initiates appellate review in the VA administrative adjudication process; and the request for appellate review is completed by the claimant's filing of a VA Form 1–9 (Substantive Appeal to the BVA) (1–9 Appeal) after a Statement of the Case (SOC) is issued by VA. *See Roy v. Brown*, 5 Vet.App. 554, 555 (1993); 38 C.F.R. § 20.200 (1995). The appellate review is carried out on behalf of the Secretary by the BVA under 38 U.S.C. § 7104(a).

Section 7105(b) of title 38, U.S.Code, sets forth the statutory requirements for an NOD. The NOD must be in writing and filed by the appellant or a representative within one year "from the date of mailing of notice of the result of initial review or determination." 38 U.S.C. § 7105(b)(1), (b)(2); *see* 38 C.F.R. § 20.302(a) (1995). If an NOD is not filed within the one-year time period, the RO decision "shall become final and the claim will not thereafter be reopened or allowed, except as may otherwise be provided by regulations not inconsistent with this title". 38 U.S.C. § 7105(c); *see Rowell v. Principi*, 4 Vet.App. 9, 17 (1993). An NOD must be filed with "the activity which entered the determination with which disagreement is expressed". 38 U.S.C. § 7105(b)(1); *see Hamilton v. Brown*, 39 F.3d 1574, 1582–85 (Fed. Cir.1994), *aff'g* 4 Vet.App. 528, 538 (1993) (en banc).

■ An NOD is defined by regulation as "[a] written communication from a claimant or his or her representative expressing dissatisfaction or disagreement with an adjudicative determination by the [RO] and a desire to contest the result"; it "must be in terms which can be reasonably construed as [expressing] disagreement with that determination and a desire for appellate review". 38 C.F.R. § 20.201 (1995); *Hamilton*, 4 Vet. App. at 531. "The purpose of the NOD, to which VJRA section 402 refers, is to initiate BVA appellate review by letting VA know, within one year from the date of VA's mailing its notice of the result of a determination by an AOJ of the claimant's intent to appeal to the BVA." *Tomlin v. Brown*, 5 Vet.App. 355, 357 (1993). "There can be only one valid NOD as to a particular claim, extending to all subsequent RO and BVA adjudications on the same claim until a final RO or BVA decision has been rendered in that matter, or the appeal has been withdrawn by the claimant." *Hamilton*, 4 Vet.App. at 538, *aff'd*, 39 F.3d at 1582–85.

The Court holds that the veteran's September 1992 and 1993 letters to the RO constitute NODs. The September 1992 letter from the veteran's representative constitutes an NOD as to the May 1992 RO denial of the CUE claim, and the September 1993 letter

constitutes an NOD as to the July 1993 RO denial of an increased rating for the residuals. Although there is no evidence in the record on appeal of the veteran having filed any 1–9 Appeal to perfect either appeal after the September 1992 SSOC was issued, the Board proceeded to review those claims, thereby waiving the filing of the 1–9 Appeal as to those appeals. *See Rowell,* 4 Vet.App. at 17 (lack of timely filed 1–9 Appeal does not deprive BVA of jurisdiction over appeal initiated by timely NOD).

### A. September 1992 Letter

■ The veteran's September 1992 letter constitutes a valid NOD as to the May 1992 RO decision denying his CUE claim because that letter meets the requirements of § 20.201 and because it was filed within one year after mailing of notice of the May 1992 RO decision to the veteran pursuant to section 7105(b)(1). This letter is from the veteran's representative, was sent to and received by the RO, and contains terms which "can be reasonably construed as [expressing] disagreement" with the May 1992 RO decision and a desire to contest the result as is required by 38 C.F.R. § 20.201. This letter specifically referred to the CUE claim and to the May 1992 RO decision as having considered the CUE claim, and expressly disagreed with the contents of the June 1992 SSOC in that it was "procedurally deficient" because, among other things, it failed to address the CUE issue. This letter also expressed a "desire for appellate review" pursuant to 38 C.F.R. § 20.201, by requesting that a new SSOC be issued and that there be an "expeditious transfer of the file to the [Board] following the above actions."

■ Although this letter was not expressly construed as an NOD by the Secretary, the Secretary's construction does not bind this Court. Whether a document is an NOD is a question of law for the Court to determine de novo under 38 U.S.C. § 7261(a)(1). *See, e.g., West v. Brown,* 7 Vet.App. at 329, 331–32 (1995) (en banc) (determining whether jurisdictionally valid NOD had been filed with respect to claim without having had such determination made by Board); *Hamilton,* 4 Vet.App. at 538–44

(same). This letter was sufficient to initiate review of the CUE claim by the Board; it triggered the issuance of a second SSOC and led to appellate review by the BVA. *See Tomlin,* 5 Vet.App. at 357–58 (holding that statement by appellant's representative at RO hearing when later reduced to writing functioned as, and met statutory definition of, NOD because it triggered issuance of SSOC and led to appellate review by BVA).

The Court notes that VA gave the veteran incorrect information concerning his appellate rights. Although the veteran was entitled to one year during which he could file an NOD, the June 1992 SSOC (issued one month after the May 1992 RO decision) essentially informed the veteran that he had only 60 days within which to respond in order for the Board to hear the CUE claim. *See Hamilton,* 4 Vet.App. at 542 (noting that RO's denial of claims on remand from Board was first adjudication of those claims and that, notwithstanding RO's 30–day notice warning in SSOC, claimant was entitled to period of one year from date on which notice of adverse RO adjudication was sent in order to respond with NOD to initial denial of those claims). The Court also notes that, despite the Secretary's assertion that "the Court may wish to find that [the a]ppellant's [November 1992] hearing testimony before the BVA meets the requirements for an NOD" (Response to June 1995 Court order at 2), such testimony (even though given within the one-year NOD filing period) cannot constitute a valid NOD because it was taken before the Board and not the RO and it did not serve to trigger or initiate appellate review of the CUE claim. *Cf. Tomlin, supra.*

### B. September 1993 Letter

■ The September 1993 letter from the veteran to the RO stated that he disagreed with the RO's July 1993 letter "denying service connection for a through and through bullet wound to [his] upper right shoulder" and noted that he would "file a statement of [the] case through my service representative, [DAV]". Suppl. R. at 4. Because this letter is a writing from the veteran expressly stating disagreement with the RO's July 1993

decision, was filed within the one-year time period, and indicates a desire for appellate review by its reference to an SOC, the Court holds that it meets the statutory and regulatory requirements for an NOD as to the compensable-rating residuals claim now on appeal. *See* 38 U.S.C. § 7105(a), (b)(1), (b)(2); 38 C.F.R. §§ 20.201, 20.302(a).

### III.   Conclusion

Upon consideration of the record and the pleadings of the parties, the Court holds that the appellant's September 1992 and 1993 letters constitute jurisdictionally effective NODs as to the CUE and increased-rating claims, respectively, and that the Court hence has jurisdiction over the appeals as to those claims.   The case will now revert to the single judge, and the parties will proceed with this case in accordance with the Court's Rules of Practice and Procedure and with the Court's previous orders concerning the filing of the Secretary's brief.

IT IS SO ORDERED.